2012-11-53 JOY MM DELAWARE v. CINCINNATI MINE The District Court in this case made several errors of law that we are here to correct. First relates to claim construction and the all elements rule, which is where I'll begin. The District Court erroneously construed the term indentations in a way that allowed it to preclude the application of the doctrine of equivalence. The District Court's decisions on summary judgment and in the markman phase were contrary to the law of claim construction and the all elements rule. The District Court's review on these issues is de novo. The District Court acknowledged that indentations on the one hand and openings or holes on the other need not be binary concepts. Joy fully agrees with that statement. The Court's error, though, lies in its conclusion that the context of the 932 patent somehow requires those terms to have a binary relationship and to be mutually exclusive. The Court seemed convinced by the patent's use of the term openings for certain structures that indentations must therefore mean the opposite of openings. And the specification just doesn't support this conclusion. The patent does use the term opening when the structure at issue must allow an object to pass through. For example, the side plates have openings because the drive pins must go all the way through the side plate in order to reach the next element. The swivel links have openings because the swivel pins must go all the way through those openings. Contrary to the Court's conclusion, this usage does not mean that indentations must be the opposite of an opening. Well, leaving that aside a little, I mean we've had a number of cases now that invoke vitiation and the all elements rule and there are concepts like foreseeability that float around some of these cases and it can obviously get confusing. But it seems to me, leaving aside your binary choice, your client drafted the claim. He explicitly called out indentation. Holes were known. I mean they're referenced in the specification. Clearly, he could have easily claimed that in addition to indentation, which he did not. Why isn't that sufficient under our case law, whether we want to call it all elements rule or vitiation or whatever we want to call it, to establish that DOE should not be allowed under these circumstances? Well, it's sufficient, Your Honor, because in this case, the district court was only able to apply the vitiation rule, and that's a question of law, because of his holding that the term indentation was the antithesis of an opening or a hole. Is that what our cases say? That you can only apply vitiation where the second aspect of that is the antithesis of the first? Well, the word antithesis does come up in some of those cases. Opposite comes up. The concept of foreseeability does come up, but often in those cases it's combined with an actual claim construction that where the term in question by its own terms creates the antithetical relationship or the opposite. For example, in the Sage product case, you had a slot, and the claim itself identified the specific position. And here we have an indentation. Yeah, why isn't, I mean, on some level, isn't an indentation and not an opening and a hole the opposite? I mean, one can construe those two as being opposite. One has a hole and one doesn't. Well, and that's what the district court did here, but we submit that's error because it's not consistent with the way the inventor himself used the term. What would be the antithesis of an indentation then? A protrusion, for example. Something that sticks outward. But not simply the logical extension, perhaps, of an indentation. Even the term that, even the interpretation- What's the opposite of a hole? What's the opposite of a hole? Yeah, look at the flip side of it. What would you say the opposite of a hole is? Well, assuming a hole means, you know, something that allows an object to pass all the way through, as our court determined, the opposite would be any structure that is required to have an endpoint. But an indentation is not necessarily required to have an endpoint. That's the reason the term was used, is that it's neutral with regard to whether an object may or may not pass all the way through. Cincinnati suggested to the district court that the proper interpretation of indentation would be notched. And as we note in our brief, that would not be mutually exclusive of a hole because a notch in a belt, for example, is a hole that goes all the way through. The district court, as I mentioned earlier, admitted that the terms are not, by their nature, binary. And he relied on aspects of the specification to support his claim interpretation, and those aspects simply do not support his conclusion. In addition to the use of opening, the district court relied on an erroneous interpretation of the term end. He concluded that because he believed the end of the drive pin had to be fully enclosed within the flight head, that therefore indentation must preclude the drive pin from going all the way through. In summary judgment, however, the district court acknowledged that that conception of end was incorrect, and that it is not correct that the very tip of the drive pin had to be within the flight head. Well, to go back to the point you were making a moment ago, I think you said, and maybe I'm mischaracterizing you, but correct me if I am, that an indentation can be, in effect, a through-and-through hole. Is that right? Yes. I mean, if you look at, if you can see that this is a piece of paper that has three holes in it, I would be very hard-pressed to find a native English speaker that would say that this has three indentations in it. Wouldn't you? Well, if you look at the specification of the patent, Your Honor, it's clear that the inventor thought he was encompassing both concepts with the term indentation. In the abstract, the inventor uses the term indentation or hole as a sublet. They're not necessarily alternatives. Later in the specification, it's in column three, there's a final paragraph of the detailed description, which begins with, in summary then, and he uses the phrase again, indentation or hole, to indicate a summary of a general understanding of what this term is. And when one reads indentation in the claim, looks back to how the inventor used it in the specification, it reveals that the inventor believed he was claiming more broadly than the district court interpreted it to be. Well, if we buy the claim construction then, and we're just looking at DOE, why isn't this a classic case, I know the district court didn't find it, but of dedication and disclosure. If we accept the construction of indentation in the claim as not including holes, and in the specification you call out the two alternatives can be used, why isn't that a classic example of dedication to the public? You called it out, you described it, but you didn't claim it. Well, they were called out, but our contention is not that they were called out as alternatives, whereas separate embodiments, it's one embodiment that can be either or. That really is, you're making now essentially a literal Frenchman argument, it seems to me, as opposed to the doctrinal equivalence point that I think Joseph Roche was asking about. That if you assume that indentation is different from a through and through hole, you assume that as the basis for saying there's no literal infringement, then you ask, well, is it picked up under the doctrine of equivalence? Right. Why isn't Judge Prost's analysis correct? Because it was not disclosed in the specification as an entirely separate and distinct embodiment. It was referred to in clarification language, summary language, to reflect what the inventor believed he was claiming as an indentation. The district court's analysis is correct on that point, as a matter of fact, and has not been appealed in this case. Just to return for a moment to the issue regarding the end. If you just throw that thought just a bit further, this strikes me as not just a case in which at some point in the claims or in the specification the term hole is used, but at some other point the term indentation is. If you look at claim two, there are references to the drive pins themselves. In one case, the one, two, third limitation, claim two, two spaced apart openings, each opening receiving a different one of said drive pins. Then the drive pin itself having separately, having the two spaced apart indentations. So you've got the claim showing in one case what clearly is the pin going through a hole, and then another place in the same claim, the very same pin going into an indentation. Isn't that the structure of the claim? The structure is that the drive pin must go all the way through the side plate, must, therefore opening would be appropriate, and it has to be retained then in the flight head. The claim two uses the term spaced apart indentations for the structure to retain the drive pins. But when you look at the specification, it's clear that the inventor meant that to be a neutral term with regard to whether something had to or could not go all the way through. It's simply neutral. It didn't require one or the other. To the extent the district court relied on the specification to support his interpretation that these terms are mutually exclusive, we believe he erred. I'll turn briefly now to the best mode argument in our case. The district court simply got the law wrong when it entered judgment of invalidity for violation of the best mode requirement. Now, we do recognize that this defense has been eliminated, effectively, under the American Invent Act. Unfortunately, not soon enough for our case. But we do hate for what may be one of the last district court cases on this issue to be erroneous. This issue arises in connection with the claim to drive pin retaining means. The defined function is retaining the drive pins in the side plates. The structure associated in the spec with this claim limitation is welding, and as the court interpreted, welding and structure is equivalent thereto. Now, Joy conceded that the 932 patents inventor believed that press fitting at the time of filing the application was the best way of retaining the drive pins in the side plates. Joy also conceded that the specification does not use the word press fitting in connection with this claim limitation, but does disclose welding. Those two facts don't end the best mode inquiry here under this court's precedent. Joy attempted to focus the district court on the application of the routine details exception, and the district court erred by holding as a matter of law that this exception applied only to unclaimed subject matter. Routine details are those that this court defines as related to the nature or quality of the invention, but unnecessary to disclose because they are apparent to one of skill in the art. Contrary to Cincinnati's argument, these routine details are not limited to commercial considerations like cost, equipment, customer requirements. These are details that aren't routine details, are related to the nature and quality of the invention, and yet, if they're apparent to one of skill in the art, need not be disclosed. When I take a look at the patent, and I'm looking at column 2, line 6, it says your drive pins retaining means in the form of welding retains the drive pins in the side plates. That recitation seems to me to be more than something that's routine, and it would seem to me that somebody skilled in the art would look at that and say that that's the best mode. Well, the evidence before the district court was that one of skill in the art would look at that and know that press fitting would work just as well, and would be a completely appropriate means of retaining a drive pin in a side plate. Cincinnati's expert admitted that, and Joy's expert agreed. In any event, whether one of skill in the art would understand that, would understand that press fitting was appropriate, would appear to be a quintessential question of fact, which the district court is preventing us from exploring with the jury. Now, you've almost exhausted your time, but we'll save you a little bit of time, but why don't we hear from the opposing counsel, and we'll restore a minute or so of rebuttal. Thank you, Your Honor. Thank you, Your Honors. First, with respect to the claim construction issue, Judge Prost, you were dead on when you talked about case law relative to determining whether it's an unforeseeable change, whether there's some complexity of the technology that somehow would obfuscate the meaning of these terms. Indentations and openings are well understood terms, and clearly the inventor in this case knew precisely how to use those terms, because he in fact used them, and not only used them, but in the same asserted claim. But the district court here rejected your argument with respect to dedication to the public, did it not? Well, Your Honor, that's exactly right, he did, and we disagree with that, but of course we received a favorable ruling on non-infringement for the other reasons, so clearly if this were sent back, we would be arguing that exact same position as well. I think one thing that still needs to be clarified, based on Joy's brief, and also the presentation that you just heard, is that the term indentations and openings are used in very different ways in both the claim and the specification. With respect to indentations, Joy states in its brief on multiple occasions that the drive pins are then received in the spaced apart indentations. That's not correct. It is the drive pin ends that are received and retained in the indentations. And it's an important point, because that is exceptionally different than how the term openings are used. In the claims and in the spec, the term openings are used to receive the drive pins, not the drive pin ends, and the reason is, is because in the specification, the drive pins are described as extending all the way through the openings. But the spec in column 3 does refer to indentations or holes, and that's in the same light, right? I'm sorry, Your Honor, I didn't hear. Column 3, line 54 of the spec, or 53 of the specification, does refer interchangeably to indentations or holes, right? Well, our position, that is in fact not an interchangeable use, and that's the issue that the district court dealt with. The fact that indentations, holes, and openings were used in very precise ways for different functions, mind you, that indicates that these claim terms have different meanings. And that goes back to the presumption that is applied when you have different claim terms that they should presumably have different meanings. That's not the use of the word or. Indentations or holes. That indicates an alternative, doesn't it? I think perhaps an alternative, but not that they're interchangeable, that they are different terms. And wouldn't an alternative be something that's interchangeable? I mean, it's another suitable use. Perhaps, but at the same time, different. Perhaps alternatives, but different. And when you look at Claim 2, the only asserted claim, openings and indentations are both used. And so the district court was faced with the idea that these are different claim terms, but didn't just rely upon the presumption that you would have for claim differentiation. It seems the court started off by embracing the notion that the two terms are binary. And yet, your opponent says that the real opposite of an indentation is a protrusion. It seems to me, despite Judge Bryson's paper that he held up, if I walk up to a cave and I see an indentation in the face of a rock, it can be open in the end or it can be closed. Well, if it's open in the end, then one of ordinary skill would call it an opening, not an indentation. I was rattling my brain for some examples. We have a cave, we have paper, which was the best example. What I was thinking of is if you have a dent in the side of your car, you don't call that an opening. But if you have a bullet hole that has passed through that same door, you don't call that an indentation. Well, if you're on a golf course and you have a hole, right? But their hole has no opening. That's true. And with all due respect, we are not on a golf course here. This is in the context of a flight conveyor. And in this context and in the context of... That's a good example. I mean, Judge Gross, I think, hit it on the head here. In the English vernacular, not all holes have an opening. Well, and I think the converse is attempted to be argued here by Joy, is that an indentation would actually be able to be something that extends all the way through. And when you look at the specification, when you look at the claims, that is clearly not the case here. And Judge Lancaster dealt with that specifically in his ruling. Let me bring you back, if I could, to the sentence that I... I don't remember whether it was Judge Rainer or Judge Probst, but it wasn't me, asked you about. The sentence that's at column 3, lines 52 through 56, that your opposing counsel emphasized. What do you understand that sentence to be referring to in the design or in the invention? Because it's not... That sentence itself has no specific references to structure. So what is the structure that you understand that to be alluding to when it says that the pins are... that the pins fit into the indentations or holes in the flights? If you could turn to one of the diagrams, if you have that available to you, and then point to me what it is that that sentence is referencing with respect to the use of the term holes or indentations, or indentations or holes. If you look at A102 in the appendix, which would be figure 2, so if you look at... you see the first link at the top that has the flights, and then there's another link that does not have the flights attached there too. The specification and the claims make it very clear that the term opening, let me start with that if I could, opening refers to the second link where you see that the pin is very clearly described or depicted as passing all the way through the side plate. That is where openings are used repeatedly in the context of the claim and the specification. Now, if you look at the link immediately above that, again we're at A102, the top link, which has the flights 110 attached to each side. In very similar respect to the link we just looked at, you have side plates toward the center and you see the drive pins extending all the way through. And it is in that context where the inventor and the specification and the claims uses the term opening. If you proceed farther remotely away from the center line of the chain, the drive pin enters one side of the flight head. And as you can see, there's no depiction here where the flight or the drive pins extend all the way through. Is that because there's a, I mean, I'm looking at the figure and I can't tell if it doesn't extend through because they're not that long or because there's not a hole there? And, Your Honor, I think the point to be made there is the specification is simply unclear. And common parlance in common patent law is you can't really look at the figures and make a determination. If I look at that, then I can say, well, there's either an indentation. I see an indentation. There could be a hole. There's either an indentation or a hole there. I will submit that that's a possibility, although it's not certainly described. And if there was an opening, then the pins would be described and depicted as passing all the way through. But the key here is the inventor knew how to use the term indentation, knew how to use the term hole, and knew how to use the term opening. And in the same claim, used the term opening in one respect and used the term indentation in a different respect and for a different purpose. So, to cut to the chase, if I understand your response to my question, it is that the pin, unfortunately, at the top of 102, there are no numbers, but there are two pins that are associated with the top flight. Those pins pass through the first vertical plate that is closest to the center of the device and then pass into, as you view it, the second vertical plate that is more outboard from the center of the device. And you're saying that that sentence is referring to holes with reference to the first plate and indentations with respect to the second. Precisely correct. And that's why it's important to note that in the specification, it talks about the ends of the drive pins being retained in the indentations, the ends, whereas with respect to openings, the drive pins are described as passing all the way through. Now, Joy concedes that if the district court got the claim construction correct, they cannot win on infringement. They've conceded no literal infringement, and if the district court's claim construction is deemed proper, then they agree that the all-in-once rule prevents the application of the doctrine of equivalence. So if I could, then I'd move on to best mode briefly. The review here is... Your opposing counsel would agree with that. I thought... I'm assuming the claim construction of indentations is correct. I think that's what they press on DOE about. Actually, they concede in their brief that if the district court's claim construction is upheld, then there is no application of the doctrine of equivalence because of the all-in-once rule that's in their brief. They've conceded that point. So, then, with that, if I could move on to best mode. It's certainly... Actually, I think it's in both their opening and their reply brief, but we can certainly find that. And the reason is this. It's because the district court correctly construed indentations and openings as being used for different reasons but in the same claim. And so they are the opposite of each other. And the district court got that right based on review of the specification and the claims. Oh, I see. The sentence on page 18, halfway down the sentence, Joy concedes that if the court's interpretation of indentations is correctly binary and the converse of an opening, the all-in-once rule is correct. That's right. Page 18, you're exactly right. OK. Moving to the best mode, then. Really, what Joy is arguing with respect to the best mode is a dramatic change from what is the law on the issue of best mode. Whether the best mode disclosure requirement applies is very clear. If it is a claimed element, then it is, in fact, subject to the best mode disclosure requirement. It is very clear they're a repeated case law from this court that says just that. If anything, there are several cases that suggest that the best mode disclosure requirement goes beyond that. Even if it's not precisely mentioned in the claims, the best mode disclosure requirement does, in fact, or can apply if the, quote, information bore a strong relationship to the claimed invention. But we don't have to deal with that here because the fact of the matter is the undisputed fact is the drive pin retaining means, which is the issue here, is an express claim limitation. And so this court has been repeatedly clear that the best mode disclosure requirement does, in fact, apply. Now, let's look and see if that was complied with. Joy concedes in their brief and in their presentation that the inventor testified under oath that he did have a preferred method of practicing that precise claim limitation. And his preferred method was press fitting. And then it's just a simple objective look, a review of the specification, and as was mentioned by one of the judges during the opening presentation, the disclosure is melding and nothing more. And that is a violation of the best mode disclosure requirement. It is a requirement in this case because it is a claim limitation and it was not disclosed. I see that I'm out of time. Was it concealed? It certainly was. And it was concealed because it was not disclosed. Judge Ray, I'm... Do you think that that clause, the driving mean, pin retaining means for retaining said drive pin is a means plus function clause? It is, yes. It is. I mean, that's a different issue from best mode, of course, because then that would be limited to the structure disclosed. You're precisely right, and that's exactly what the district court did. It construed this claim limitation as a means plus function claim. But that was for purposes... But if that's true, and if the whole claim is limited to the structure that's disclosed, then press fitting would avoid infringement unless it's an equivalent of welding, and therefore the claim only covers welding. If it covers welding, the best mode is shown. So no best mode problem. I respectfully disagree. I think what you're saying is that for claim construction or claim interpretation is the same analysis for best mode disclosure requirement? No, I'm saying something a little different. I'm saying if you start with claim construction and you assume that this is a claim in means plus function format, then that limits the patent to the structure plus equivalence that's disclosed in the specification, which is welded. And if the patent is limited to welding, there's no best mode problem because you've shown welding is specifically called out. Well, if I may, first of all, the district court went so far as to construe this claim construction as being welding or its equivalent. Okay? But still, the inventor's belief as to what the best mode is remains hidden, and that is what is required by the best mode disclosure requirement. But that depends on finding that the... that the press fitting would be equivalent to welding. Okay, well, go ahead. Okay. Well, are you arguing that just merely not disclosing the other mode is concealment? Thank you for bringing me back to your point. I wanted to answer your question. That is exactly correct. Concealment does not require any intent on the part of the inventor. And I'll refer the court to three separate cases, if I may. Bracco v. Binks, 60 F. 3rd, 785, at page 789. Spectra Physics v. Coherent, 827 F. 2nd, 1524, at page 1535. And U.S. Gibson v. National Gibson, 74 F. 3rd, 1209. Have you shared those citations with your opposing counsel? Certainly, and they are in our brief. Oh, okay. These are not new citations, are they? They are not at all. We do have some other cases that suggest that intent is a requirement. High Concrete, I think, is one of those. Yeah, and I think what that case was suggesting is clearly if you have some inventor intention to conceal like a trade secret, that certainly qualifies as a concealment. But these cases from the Federal Circuit stand for the proposition that it does not matter if there was some wrongful intent to hide something. Concealment is whether or not it appears in the specification, not whether the inventor had some wrongful intent. Okay. We've gone well over time, but I'm going to restore some additional time to your opposing counsel for a rebuttal. Thank you. Thank you. Ms. Tomlinson, could you add four minutes for the rebuttal? Yeah, a total of four minutes is fine. Thank you. Thank you. With respect to best modes, and I'll just pick up where the discussion left off here, recent cases have made clear that concealment is shorthand for what would be apparent to one of ordinary skill in the art. And the second prong of the best mode analysis is whether the patent's disclosure is sufficient to allow one of ordinary skill in the art to understand what the best mode is. Now, the evidence is undisputed. Both sides' experts agree that one of skill in the art, anyone of skill in the art, knew that press fitting and welding are basically equivalent, that disclosure of welding would allow one of ordinary skill in the art to understand press fitting is also to be used in that same, serves the same, would apply to that claim limitation. It's simply not possible to conceal the concept of press fitting in the sort of nefarious way that other specially designed techniques were concealed in some of the cases such as spectrophysics, where a six-step process was developed through extensive experimentation but withheld from the specification. That's the type of concealment. That's just not possible in the context of this case. And I disagree with my opposing counsel that Joy is seeking a change in the law of best mode. The cases like High Concrete and the supplemental authority we submitted, the most recent case from this court on best mode, which is the... You're in. Yes, thank you. Both involve situations where the undisclosed material was within the scope of the claim at issue, undisclosed, but deemed to be apparent to one of ordinary skill in the art, and therefore the nondisclosure was not a best mode violation. I'm still, perhaps I'm barking up the wrong tree here, but I'm still kind of hung up on this, the interaction between best mode and means-plus-function. Means-plus-function claim picks up the structure that's disclosed and equivalent structure in the spec. If the structure is equivalent, it hasn't been disclosed, and does that mean that if the undisclosed structure is better than the disclosed structure in the view of the inventor that that constitutes a best mode violation? Is that the way that the means-plus-function and the best mode would interact? But if the inventor did not say that the equivalents were as good as the particular structure that was called out that there wouldn't be a best mode violation. Is that how it all gets sorted? Well, it's a good question because we have been unable to find any cases where this specific issue was addressed in the context of a means-plus-function claim. And by use of a means-plus-function claim, it signals the inventor's belief that welding or any number of structures satisfies the claim. And the equivalent structure, and the equivalent device, right. And there's no dispute that although press fitting is not expressly disclosed in the specification, that technique was apparent and would have been apparent to anyone of skill in the art. Much like choosing a paper clip versus a binder clip would be apparent to a lawyer when trying to compile papers. But that issue wasn't joined before the district court. You didn't make the argument to him that sort of a variation of what Judge Bryson is saying that because it's a means-plus-function, it kind of almost precludes... No, true, that's correct. Because it was clear from the evidence that regardless of whether it's a means-plus-function or not, press fitting was readily apparent. It was a known operation to perform a known function, which as this court held in high concrete, need not be disclosed. Now one other question, which I had not really focused on until your opposing counsel raised it, but I had thought you had made a separate doctrinal equivalence argument separate from your claim construction argument. So now that I reread the sentence on page 18, do I concede that if the court's interpretation of indentation is correctfully binary and the converse of an opening, the all-elements rule must apply? It sounds like you're saying if you're wrong on claim construction, you lose on DOE. Yes. Yeah, okay. Because the... And it's only because the claim construction took that further step of requiring the terms to be mutually exclusive, which we contend is error. The claims can be different without being mutually exclusive, and it's that extra gloss... I see. ...that precluded the structures. We pictured the structures... But you're not talking about the portion of the claim construction that says indentation doesn't mean anything other than indentation. We believe it's the construction that mandates them to be mutually exclusive, which is what dictates the coverage of the DOE. Okay. And that the structures are equivalent as you look at them in the picture in our brief. They have this little non-functional tip that pokes out that is geometrically substantially identical and therefore substantially equivalent to this structure. Very well. We'll have to bring it to a close there, and we thank both counsel and the case's submitters. Thank you, Your Honor. All rise. The court adjourns until tomorrow at 3 o'clock.